Jeannette LUDWIG, On Her Own Behalf and on Behalf of All Other Similarly Situated Iowa Policyholders and Insureds of Farm Bureau Mutual Insurance Company, A Corporation, Appellee,

v.

FARM BUREAU MUTUAL
INSURANCE COMPANY,
Appellant.

No. 85–1296.

Supreme Court of Iowa.

Sept. 17, 1986.

James A. Pugh of Morain, Burlingame, Pugh & Juhl, West Des Moines, for appellant.

Willis J. Hamilton of Hamilton Law Firm, P.C., Storm Lake, for appellee.

L. Call Dickinson, Jr. and Craig F. Graziano of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for amicus curiae Blue Cross of Iowa and Blue Shield of Iowa.

LARSON, Justice.

The plaintiff, Jeannette Ludwig, was insured under an automobile policy with Farm Bureau Mutual Insurance Company (hereinafter Farm Bureau) which provided coverage for medical expenses incurred by occupants of the insured vehicle. The policy also provided for subrogation for any medical payments made by it. In 1980, while the plaintiff was traveling in Kansas with her husband and mother-in-law, her car was involved in a collision with a truck. All three were injured, and Farm Bureau paid their medical expenses. The three occupants of the car then sued the truckline. Farm Bureau served notice of its subrogation rights on the trucker's insurance company.

The suit against the truckline was settled. A summary of the settlement showed a total amount of $45,000.00 received, with $13,223.26 allocated for subrogation claims for the three victims ($9380.97 for Farm Bureau and the balance for Blue Cross and Blue Shield, whose claim is not involved here). The balance of $31,776.72 was distributed to Jeannette Ludwig and the other two plaintiffs.

Farm Bureau was not involved in the settlement proceedings, however its subrogation interests were protected by the trucker's insurance company which issued a separate check for medical expenses, made payable jointly to Farm Bureau and Jeannette Ludwig. When a disagreement arose over who was entitled to this check, Ludwig filed suit with Ludwig as plaintiff "on behalf of all similarly situated Iowa policyholders and insureds of Farm Bureau Mutual Insurance Company."

The district court, Charles Barlow, J., refused to certify the suit as a class action, and the case proceeded to trial with Jeannette Ludwig as the sole plaintiff. (She raises the court's refusal to grant class-action status as an issue on cross appeal.)

The district court, James L. McDonald, J., ruled that Farm Bureau was entitled to be reimbursed for its payments of medical expenses only if Ludwig had been "made whole" by the settlement with the truckline. The court concluded she had not been made whole and denied reimbursement. Farm Bureau appealed. We reverse and remand on the appeal and affirm on the cross appeal.[1]

The subrogation section of the policy provided:

Upon payment under part II of this policy [the "medical protection" provision] the Company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

Farm Bureau concedes that it cannot recover under this subrogation provision unless its insured has been "made whole" for her loss. See *Chickasaw County Farmers' Mutual Fire Insurance Co. v. Weller*, 98 Iowa 731, 735, 68 N.W. 443, 445 (1896); *Thiringer v. American Motors Insurance Co.*, 91 Wash.2d 215, 220, 588 P.2d 191, 193

---

1. We summarily resolve the question of class action certification. Such questions are addressed to the trial court's discretion, and we will reverse only on abuse of that discretion. *Vignaroli v. Blue Cross of Iowa*, 360 N.W.2d 741,

743–44 (Iowa 1985). The court was well within its discretion in denying certification here. *See* Iowa R.Civ.P. 42.3. (factors to be considered on question of certification)

(1978); 6A J. Appleman, *Insurance Law and Practice* § 4094, at 265 (1972); 46 C.J.S. *Insurance* § 1209, at 155 (1946). *But see Davenport v. AID Insurance Co.*, 334 N.W.2d 711, 713–15 (Iowa 1983) (requirement that insured first be made whole modified by Uninsured Motorist Act, Iowa Code section 516A.4). Some states, not including Iowa, restrict subrogation of medical payments by statute. *See, e.g., Aetna Casualty & Surety Co. v. State Board for Property & Casualty Rates*, 637 P.2d 1251 (Okla.1981).

On the question of whether she had been made whole by her settlement with the trucker, the plaintiff proceeds from the premise that all settlements are by their nature compromises and necessarily result in less than full compensation. She testified that she had settled the case and accepted less than her actual losses because of the delay and mental stress inherent in a trial, not because her case was worth less than what she had demanded. She believed she would have received more if she had gone to trial. Under these circumstances, she argues, a presumption of inadequacy should be recognized.

Farm Bureau, on the other hand, argues that, when a settlement is made without the involvement of the subrogee, the insured is presumed to be "made whole." It argues that such rule is especially necessary where, as in this case, the insurance company's rights to proceed directly against the third party are effectively destroyed by the insured's general release of the third party. It also points to the language in the subrogation agreement which prohibits the insured from doing anything to prejudice its subrogation rights.

The district court did not adopt either of these presumptions, proceeding instead to make a determination from the evidence as to whether Ludwig had been fully compensated. It found that Ludwig's medical expenses, lost wages, expense of hired help, and car damage were established and attributed specific dollar amounts to those items. It noted that the plaintiff's medical expenses had been paid by Farm Bureau and that she had also been paid for them through the third-party settlement. It concluded, however, that she still had not been "made whole," because her claims for pain and suffering and disability had not been fully paid.

We believe this was error. An insured need not be paid in full for pain and suffering and disability before subrogation for medical expenses is allowed. Here the medical expenses advanced by Farm Bureau were made a specific item of settlement, and Jeannette Ludwig testified she knew at the time of the settlement that Farm Bureau and Blue Cross were to receive the amounts of their medical payments and that she was to get $20,000 for her other damages.

The plaintiff relies on the Wisconsin case of *Rimes v. State Farm Mutual Automobile Insurance Co.*, 106 Wis.2d 263, 316 N.W.2d 348 (1982), which involved a similar fact situation. An insurance company, which had paid out under the medical-pay provisions of its automobile policy, attempted to recover a portion of the settlement proceeds from its insured. The district court there found, in a "mini-trial" on the subrogation claim, that the total damages to the insured parties was $300,433.54 and the settlement amount of $125,000.00 was therefore inadequate to make them whole. The Wisconsin Supreme Court, in a split decision, affirmed. The majority stated this to be the rule:

Under Wisconsin law the test of wholeness depends upon whether the insured has been completely compensated for *all* the elements of damages, *not merely those damages for which the insurer has indemnified the insured.* Thus the mere fact that the settlement figure of $125,000 exceeded the insurer's claim for subrogation is immaterial. The injured or aggrieved party is not made whole unless *all* his damages arising out of a tort have been fully compensated.

*Id.* at 275, 316 N.W.2d at 355 (emphasis added).

In *Rimes,* there was no effort to isolate the settlement proceeds attributable to

medical expenses because, under the court's approach, it would make no difference; if a third-party settlement left unsatisfied *any* elements of the claim, the insurer could not recover its medical payments. This ruling appears to stem from the Wisconsin court's view that the amounts of recovery for various elements of the third-party action cannot be separately identified. The court said that "the cause of action against a tort-feasor is indivisible. Accordingly, it is only where there has been full compensation for all the damage elements of the entire cause of action that the insured is made whole." *Id.*

A single negligent or wrongful act causing personal injury and property damage creates but one cause of action with separate items of damage. 6A Appleman, *supra,* § 4095, at 277. Often a subrogated amount is not coextensive with the claim against a third party; it usually involves only one element of damage as opposed to several. *See* Annot., 51 A.L.R.2d 697, 717 (1957); 44 Am.Jur.2d *Insurance* § 1818, at 806–807 (1982). Nevertheless, the fact that the claims are not coextensive will not prevent recovery by a subrogated insurer. *See* 44 Am.Jur.2d *Insurance* § 1818, at 807.

> [T]he mere fact that the claim against the wrongdoer included a claim for losses not covered by insurance [and therefore not subrogated] does not prevent a release from rendering the insured liable to return the insurance money where the contract gives a right of subrogation. An insurance company which has paid a claim for property damage, for instance, to an insured automobile, has a right to share, under the principles of subrogation, in the proceeds of a recovery against or settlement with a tort-feasor in favor of the insured, who also suffered personal injuries in the same acci-

dent. In such a situation the burden of showing that the amount received by the insured represents the satisfaction of his claim for personal injuries, that is, the element of the cause of action with respect to which the insurer enjoys no right of subrogation, and not his claim for damages to the insured property, the element with respect to which the insurer may be subrogated, rests upon the insured, and in the absence of proof so showing, the recovery will be presumed to include the full amount of the property damage, and the insurer must be permitted to recover the full amount paid by it under the policy....

*Id.* Exercising subrogation rights to some, but not all, of the claims is not considered to be a splitting of the cause of action. *Id.* § 1812, at 801–02.

We disagree with the holding of the *Rimes* case. The amounts recovered against a third party for separate elements of a claim can be identified and credited toward subrogation claims, even though other elements of the third-party claim may not be fully satisfied. Allocation of the separate amounts could be done in the settlement documents, as in this case.[2] In the case of trial it could be done by special interrogatories, *Westendorf,* 330 N.W.2d at 702; *Dockendorf v. Lakie,* 240 Minn. 441, 448, 61 N.W.2d 752, 756–57 (1953), or by separate findings by the court in a nonjury case. *See* Iowa R.Civ.P. 179(a).

The purpose of subrogation is to prevent unjust enrichment of one party at the expense of another. *See* Restatement of Restitution § 162, at 653 (1937); 73 Am.Jur.2d *Subrogation* § 4, at 601 (1974). When the total of the insured's recovery from a third party, and the insurance company's payments under the policy, still are less than the loss sustained, the insured has not been

---

**2.** In the present case, the settlement amounts attributed to medical expenses were made clear by the settlement documents. In many cases, however, identification of specific amounts will be more difficult. A lump sum settlement might be made. Or the insured and the third party, perhaps being less than solicitous about the interests of a subrogee, might attempt to

establish by agreement that the settlement included little or no reimbursement for medical expenses, thus increasing the insured's net recovery. *See Westendorf v. Stasson,* 330 N.W.2d 699, 702 (Minn.1983). When the amount attributed to the subrogated claim cannot be determined by other means, a mini-trial, such as that used in *Rimes,* might be required.

made whole, and the insurer may not recover against him. 6A Appleman, *supra*, § 4094, at 265. This principle is a salutary one; if any loss remains after reimbursement by the third party, it should be borne by the insurer who has been paid to assume such losses. Holding otherwise could result in a windfall to the insurer.

In this case, Farm Bureau's policy did not agree to indemnify Ludwig for pain and suffering or disability. Yet, denial of its claim for medical expenses because Ludwig had not also recovered for other elements of damage would have the effect of making Farm Bureau an insurer against those losses as well. This would be a windfall to an insured who has not paid for such protection.

An early Iowa case, *Chickasaw County Farmers' Mutual Fire Insurance Co. v. Weller*, 98 Iowa 731, 68 N.W. 443 (1896), is analogous. There, a railroad company had caused a fire which burned a farmer's hay, pasture, and fences. The hay was insured, but the pasture and fences were not. The farmer settled with the railroad company, which paid for all of the farmer's losses, including the hay. The insurance company, which had also paid for the hay, sued the farmer for reimbursement under its subrogation clause. We held that, because the farmer's settlement with the railroad had earmarked a certain portion of it for damage to the hay, the insurer would be subrogated to that amount. This was so, even though the insured argued, as Ludwig does, that his total losses (those for the hay, pasture, and fences) exceeded his combined insurance and third-party recoveries. 98 Iowa at 735, 68 N.W. at 444–45.

Cases from other jurisdictions have reached similar results. *See e.g. Mutual Hospitals Insurance, Inc. v. McGregor*, 174 Ind.App. 550, 368 N.E.2d 1376 (1977) ($10,000 settlement; court determined approximately $5000 should be atrributed to medical expenses, allowing insurance company's subrogation claim for medical expenses); *Voss v. Mike and Tony's Steakhouse*, 230 So.2d 470 (La.App.1969) (insurer subrogated on car damage claims; combined suit for prop-

erty damage and personal injury settled; court segregated claims and held insured held car damage reimbursement in trust for insurer); *Davenport v. State Farm Mutual Auto Insurance Co.*, 81 Nev. 361, 404 P.2d 10 (1965) (insurance company subrogated on payment of medical expense under automobile policy; settlement of $8000 for all items of damage without apportionment deems to include payment for medical expense; subrogation allowed); *Hamilton Fire Insurance Co. v. Greger*, 246 N.Y. 162, 158 N.E. 60 (1927) (insured settled with third party for unsubrogated personal injury claim as well as claim for property damage, which was subrogated, without identification of amounts attributed to each; court said, if respective amounts could be identified, subrogation would be allowed); *Mattson v. Stone*, 32 Wash.App. 630, 648 P.2d 929 (1982) (trial court found settlement with third party included payment for medical expense, making insurered whole; insurer's subrogation claim allowed); *Transamerica Insurance Co. v. Barnes*, 29 Utah 2d 101, 505 P.2d 783 (1972) (subrogation for medical payment; summary judgment for insured reversed, case remanded for trial for determination of whether settlement had included medical expenses); *Scales v. Skagit County Medical Bureau*, 6 Wash.App. 68, 491 P.2d 1338 (1971) (court apportioned part of verdict attributed to medical expense, based on percentage of verdict deemed to be collectible and gave subrogated insurance company credit accordingly). *See generally* Annot., 73 A.L.R.3d 1140 (1976); Annot., 51 A.L.R.2d 697 (1957).

We hold it was error to deny Farm Bureau's subrogation claim to the excess of Ludwig's recovery over and above her medical expenses. We remand for entry of judgment accordingly. On remand, the court shall consider whether Ludwig should be given credit for a portion of the attorney fees incurred in the collection of this amount from the third party. *See generally Skauge v. Mountain States Telephone Co.*, 172 Mont. 521, 565 P.2d 628 (1977); *United Pacific Insurance Co. v. Boyd*, 34 Wash.App. 372, 661 P.2d 987

(1983); *State Farm Mutual Auto Insurance Co. v. Geline*, 48 Wisc.2d 290, 179 N.W.2d 815 (1970); 6A Appleman, *supra*, § 4096, at 287–88; 44 Am.Jur.2d *Insurance* § 1820, at 808. We express no view as to whether such allowance should be made.

REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS APPEAL.

All Justices concur except McGIVERIN, SCHULTZ and NEUMAN, JJ., who take no part.